**ANDREW LAVOOTT BLUESTONE, ESQ.**
233 Broadway, Suite 2702
New York, NY 10279
(212) 791-5600
alb@bluestonelawfirm.com

*Proposed Special Legal Malpractice Counsel to the Chapter 7 Trustee*

| | |
|---|---|
| In re: | Chapter 7 |
| KENNETH IRA STARR, *et al.*, | Case No. 11-10219 (ALG) |
| Debtors.[1] | Jointly Administered<br>Substantively Consolidated |
| ROBERT L. GELTZER, AS CHAPTER 7<br>TRUSTEE OF KENNETH IRA STARR,<br>STARR & COMPANY, LLC AND STARR<br>INVESTMENT ADVISORS, LLC, | Adv. Pro. No. 13-_____ (ALG) |
| Plaintiff, | |
| vs. | |
| JONATHAN  BRISTOL, | |
| Defendant. | |

## **COMPLAINT**

Robert L. Geltzer, as Chapter 7 Trustee (the "Trustee" or "Plaintiff") of each of the

debtors (the "Debtors") in the above-captioned jointly administered and substantively

consolidated Chapter 7 cases (collectively, the "Case"), by and through his undersigned Special

---

[1] The Debtors in this jointly administered and substantively consolidated Chapter 7 case, and the respective original case numbers assigned to each of the Debtors are: Kenneth Ira Starr  ("Starr") (11-10219 (ALG)); Starr & Company, LLC ("Starrco") (11-10637 (ALG)); and Starr Investment Advisors, LLC ("SIA," and together with Starrco, the "Starr Companies") (11-10639 (ALG)).

Legal Malpractice Counsel, brings this Complaint against Jonathan Bristol ("Bristol" or "Defendant") and respectfully alleges[2] as follows:

## NATURE OF THE ACTION

1.    This is an adversary proceeding brought by the Trustee pursuant to 11 U.S.C. §§ 544, 548 and 550 and New York Debtor Creditor Law §§ 273, 274, 275, 276, 276-a and 278, to avoid and recover fraudulent conveyances made to the Defendant, plus applicable interest thereon, and for legal malpractice in tort and in contract, for breach of fiduciary duty, for aiding and abetting fraud, for aiding and abetting a breach of fiduciary duty and for breach of New York (State) Judiciary Law § 487 and to obtain other related relief.

## THE PARTIES

2.    The Trustee is a resident of the State of New York and is a licensed attorney maintaining an office at 1556 Third Avenue, Suite 505, New York, New York 10128.

3.    Defendant Bristol ("Defendant" or "Bristol") is an individual whose last known address is 19 Yarmouth Road, Chatham, New Jersey 07928.  At the times relevant to this proceeding, Bristol was an attorney and partner at the firm Winston & Strawn LLP ("Winston & Strawn"), an international law firm with fourteen offices worldwide, including offices in New York, New York and Newark, New Jersey. The firm represented Starr and the Starr Companies in various legal matters for at least one and one half years before their business operations

---

[2] The allegations in this Complaint are based upon the Trustee's information and belief, obtained, without limitation, from a review of documentation located in various files of the Debtors, from a review of additional documentation obtained by the Trustee and/or his professionals from other sources, and from a review of other publicly available documentation, as well as review of documents produced by the former Receiver of the Starr Companies, Aurora Cassirer, Esq.

terminated in May 2010.  The firm also represented individuals who were referred to Winston & Strawn by Starr and the Starr Companies.

4.      In November 2008, Bristol joined the law firm of Winston & Strawn as a partner in the New York office. Bristol, in his capacity as a partner of Winston & Strawn, represented the Starr Companies in various matters. Bristol, again in his capacity as a partner of Winston & Strawn, also represented several clients of the Starr Companies.

5.      On May 27, 2010, the Securities and Exchange Commission commenced an action (the "SEC Action") in the United States District Court for the Southern District of New York against defendants Starr, SIA, and Starrco and relief defendants Diane Passage and Colcave, LLC ("Colcave"). By order dated June 7, 2010 (the "Order"), the court appointed Aurora Cassirer, Esq. (the "Receiver") as temporary receiver for the Starr Companies and Colcave.  The court appointed Ms. Cassirer as permanent receiver by order dated July 8, 2010.

## JURISDICTION AND VENUE

6.      The United States District Court for the Southern District of New York (the "District Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334.  By virtue of 28 U.S.C. § 157(a) and the Amended Standing Order of Reference dated January 31, 2012 of Chief Judge Loretta A. Preska of the District Court, this adversary proceeding is automatically referred to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

7.      This adversary proceeding is a core proceeding under, among other things, 28 U.S.C. § 157(b)(2)(A) and (H).  Because this is a core proceeding, the Bankruptcy Court has jurisdiction and power under 28 U.S.C. § 157(b) to hear and determine this adversary proceeding. The Trustee consents to the entry of final orders or judgments by this Court if it is determined

that this Court, absent consent of the parties herein, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8.      This adversary proceeding is commenced pursuant to sections 544, 548, and 550 of the United States Bankruptcy Code (the "Bankruptcy Code"), sections 273, 274, 275, 276, 276-a and 278 of the New York Debtor and Creditor Law, the common law of the State of New York, and the general equity powers of the Bankruptcy Court to recover money or property of the estate.

## PROCEDURAL BACKGROUND

9.      On January 7, 2011, an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against Starr in the Bankruptcy Court by the Estate of Joan Stanton and JAS Ventures, L.P.  The Bankruptcy Court entered an order for relief on July 12, 2011, and shortly thereafter, the Trustee was appointed as the interim Chapter 7 trustee of Starr, and subsequently became permanent Trustee pursuant to Section 702(d) of the Bankruptcy Code and by operation of law.

10.      On February 17, 2011 (the "Petition Date"), the Receiver filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court on behalf of the Corporate Debtors.

11.      On December 8, 2011, upon a motion by the Trustee, the Bankruptcy Court entered an order (the "Consolidation Order") (Docket No. 65) substantively consolidating the estates of Starr and of the Corporate Debtors into a single Chapter 7 estate.  As a basis for the substantive consolidation, the Bankruptcy Court found, among other things, that it appeared that Starr had used the assets of the Corporate Debtors and their clients for his personal use and the

use of his family and other of his acquaintances, and that the affairs of the Debtors were hopelessly entangled due to, among other things, Starr's use of the assets of the clients of the Corporate Debtors to perpetrate his fraud and to fund his lifestyle.

12.     On December 27, 2011, the Trustee was appointed as successor trustee for each of the Corporate Debtors, and continues to serve as Trustee of the Debtors' substantively consolidated Chapter 7 estate.

## FACTS

### I.    The Starr Fraud

13.     The Debtor Starr, individually and/or through the Starr Companies, managed the financial and related personal affairs of, and served as an investment advisor for, numerous wealthy clients, some of whom are well-known celebrities.

14.     The Starr Companies were full service enterprises.  As part of their services, the Starr Companies typically collected and deposited into client bank accounts the various forms of income earned by their clients. The Starr Companies also paid the clients' various bills when due. The Starr Companies also provided accounting, bookkeeping, and tax services for the benefit of clients, their family members, and their associated businesses. The Starr Companies maintained financial and accounting records for a large number of these clients, arranged their payroll through Paychex, took care of payment of other of their expenses, and prepared their tax returns. The Starr Companies provided these services to clients individually, as well as to their family members and affiliated business entities. In order to perform these services, the Starr Companies arranged for many clients to execute powers of attorney in favor of Starr and others at the Starr Companies, thereby giving Starr and the Starr Companies access to and power over the clients' funds.

15.     On or about May 26, 2010, the United States brought a criminal proceeding (the "Criminal Proceeding") against Starr in the District Court, Case No. 10-CR-00520-SAS-1, alleging, among other things, that Starr utilized the Starr Companies to commit various forms of fraud and misappropriation of client assets.    In particular, it was alleged that Starr made unauthorized transfers of client funds to his own personal accounts and that he defrauded his clients by inducing them to invest in risky, illiquid businesses and ventures in which he, his wife, or other associates held material interests.

16.     In addition to the Criminal Proceeding, on or about May 26, 2010, the United States Securities and Exchange Commission (the "SEC") commenced a civil enforcement proceeding in the District Court against the Debtors (the "SEC Proceeding"), Case No. 10-CIV-4270 (SHS) alleging, among other things, that the Debtors had perpetrated a fraudulent scheme, abusing the signatory power they had with respect to their clients' bank and investment accounts, and misappropriating client funds for their own purposes.

17.     Aurora Cassirer, Esq. was appointed in the SEC Proceeding as the temporary, and then the permanent, receiver (the "Receiver") for the Starr Companies as well as for a non-Debtor entity,  Colcave,  LLC.

18.     On or about September 10, 2010, Starr pled guilty in the Criminal Proceeding to, among other things, running a Ponzi scheme, and is presently serving a seven and one-half year prison term at the Federal prison located in Otisville, New York.

19.     On or about December 14, 2010, the United States brought a criminal proceeding against Defendant Bristol in the District Court, Case No. 10-CR-1239-DAB, charging Defendant in an indictment with one count of money laundering conspiracy in violation of Title 18, United States Code.   Among other things, the  indictment charged Bristol with helping Starr defraud his

clients and conceal Starr's criminal conduct by using one or more attorney trust accounts collectively, the "Bristol Escrow Account") that Bristol controlled, into which accounts monies of various of the Debtors' clients were deposited and from which accounts monies were disbursed to fund Starr's lavish lifestyle and to make settlement payments and other distributions to other of the Debtors' clients.

20.    On or about May 2, 2011, Defendant Bristol pled guilty to a superseding information charging him with a money laundering conspiracy and was sentenced to a supervised release term of three years.

21.    Before the fraudulent activity began to damage the businesses, the Starr Companies had over 200 wealthy clients, and annual revenues were over $12,500,000. The Starr Companies fulfilled a niche in the accounting world, catering to the demands of high net-worth, and in many instances famous, clients. In return for addressing the clients' every financial and accounting need, the Starr Companies received profitable fees. A large portion of the Starr Companies' clientele had been clients for many years, ensuring a steady stream of revenue. In early 2010, Starr submitted a loan application in which he valued his assets. At that time, Starr valued his 100% direct or indirect ownership interest in Starrco at $25,000,000 and SIA at $10,000,000.

22.    On June 10, 2010 a federal grand jury handed down a twenty-three count indictment against Starr in the Criminal Proceeding, and on September 10, 2010, Starr pled guilty to counts 9, 21 and 22 of the indictment. Starr's guilty plea establishes that Starr perpetrated a criminal scheme involving acts of wire fraud, money laundering, and investment adviser fraud by which Starr caused losses in excess of $20,000,000 to clients of the Starr Companies.   By pleading guilty to count 21 of the indictment (Money Laundering), Starr

admitted that "[f]rom at least in or about January 2009, through and including in or about April 2010…in misappropriating his clients' funds, [Starr] wired them to [the Bristol Escrow Account] before diverting the funds to their ultimate destination to make it appear as if the funds were being directed to lawful and appropriate investments and were being received from a lawful and appropriate source."

23.     Defendant's actions facilitated Starr's fraudulent activity. Through Defendant's cooperation, Starr was able to launder the client funds so that third parties believed the money rightly belonged to Starr. Those third parties received wire transfers from the Bristol Escrow Account. Those third parties had no reason to doubt Starr's ownership claims because Defendants provided the illusion of legitimacy.

24.     Defendant, by contrast, knew the money originated with clients of the Starr Companies. Defendant also knew that the money was diverted to Starr's personal use. Further, upon information and belief, Defendant knew that Starr had no legitimate explanation for this diversion. Despite the obvious misappropriation, Defendant continued to assist Starr's fraudulent activity. In return for their assistance, he received remunerative compensation, billing approximately $2,500,000 on behalf of Winston & Strawn and/or himself to the Starr Companies and clients of the Starr Companies. Defendant also received significant funds from the Bristol Escrow Account that can be directly traced to stolen client funds.

25.     Records of various banks with whom Starr and the Starr Companies had accounts, as well as records of the Bristol Escrow Account, reflect that within the single year before his arrest, Starr directed the unauthorized transfer of at least $24,500,000 from client bank accounts to the Bristol Escrow Account.

26.     The same bank records demonstrate that Defendant assisted Starr's misappropriation of the following funds:

a.     Between January and April 2010, Bristol transferred approximately $6,750,000 of monies of the Debtors' clients from the Bristol Escrow Account to another escrow account in order to facilitate Starr's purchase of a luxury condominium. Bristol also transferred approximately $1,250,000 of monies of the Debtors' clients to Starr's personal UBS Financial Services account. A portion of this money was also used in the purchase of a condominium. The record owner of the condominium was Colcave, but Starr and his wife Diane Passage were the ones who actually resided in the condominium.

b.     On January 7, 2010, Bristol transferred approximately $4,000,000 of monies of the Debtors' clients from the Bristol Escrow Account to an entity controlled by one of Starrco's clients, a playwright and screenwriter in his 80s ("Victim A"). This payment related to a 2009 settlement in which Starr, Starrco, and Victim A settled purported fraud claims asserted by Victim A. Upon information and belief, Starr caused Starrco to enter into the settlement to hide his prior fraudulent conduct. The $4,000,000 payment was made in furtherance of the continuing cover-up of this scheme.

c.     In April and May 2010, Bristol transferred additional money to assist Starr's concealment of his prior fraudulent conduct. On April 26, 2010, Bristol transferred $1,000,000 of monies of the Debtors' clients  from the Bristol Escrow Account to another client of Starr who had smelled a rat ("Victim B"). On May 4, 2010, Bristol wrote two checks totaling $1,700,000 for the benefit of yet another client of the Debtors. These payments were made in order to conceal the prior fraudulent conduct.

d.      Between July 2009 and May 2010, Bristol transferred approximately $7,500,000 of monies of the Debtors' clients to entities that Starr controlled, including the Starr Companies and Marose LLC.  Starr used the Starr Companies and other entities to further launder the stolen money.  Upon information and belief, a large portion of this money was immediately diverted for Starr's personal benefit.  For example, on July 22, 2009, Bristol transferred approximately $250,000 from the Bristol Escrow Account to an SIA account at City National Bank (the "City National Account").  That same day, the funds were transferred from the City National Account to another account at the bank for the benefit of Starr individually.  By further example, on January 20, 2010, Bristol transferred approximately $400,000 from the Bristol Escrow Account to a Starrco account at JP Morgan (the "JP Morgan Account").  On January 22, 2010, Starr transferred approximately $250,000 from the JP Morgan Account—$200,000 to a Citibank account held by him and his wife Diane Passage ("Joint Account") and $50,000 to an account in the name of Martini Park (an entity in which he had an interest).  On January 29, 2010, Starr transferred an additional approximately $25,000 to the Joint Account.  On February 2, 2010, Starr transferred approximately $10,000 to a person pursuing an investment on his behalf, and on February 3,2010, Starr transferred approximately an additional $50,000 to Martini Park.  All of these amounts are traceable to the stolen funds.

## II.      Fraudulent Transfer(s) to Defendant Bristol

27.      Bank records reviewed by the Trustee and his retained professionals in connection with the Debtors' Case reveals that on or about January 20, 2010, Defendant Bristol withdrew from the Bristol Escrow Account he was maintaining on behalf of the Debtors $15,000.00 for his own use, for which no consideration was provided by or on behalf of Defendant to any of the other Debtors (the "Bristol Transfer").

28.      The Trustee and his retained professionals are still in the process of reviewing the voluminous amount of documents pertaining to the Debtors that have been obtained by and/or

turned over to the Trustee, and are also in the continued process of requesting production of additional documents and information from parties who have been the subject of examinations by undersigned counsel for the Trustee conducted pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and orders of this Court authorizing such examinations and the production of documents in connection with same.   Accordingly, the Trustee reserves the right to amend this Complaint in the event, inter alia, that any of the aforesaid documentation and information still to be reviewed by and/or produced to the Trustee and his retained professionals reveal that there were (a) additional transfers made by and/or on behalf of any of the Debtors to and/or on behalf of Defendant without any or adequate consideration therefor, and/or (b) any transfers made by and/or on behalf of any of the Debtors to any third parties that are avoidable by the Trustee, portions and/or all of which were then transferred by any of such third parties to Defendant, and are thus recoverable under the Bankruptcy Code and/or other applicable law.

## FIRST CAUSE OF ACTION

### Avoidance and Recovery of  Actual Fraudulent Conveyances
### Pursuant to 11 U.S.C. § 548(a)(1)(A) and 550(a)(1)

29.     The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

30.     The Bristol Transfer was made by and/or on behalf of the Debtors with actual intent to hinder, delay, or defraud any entity to which the Debtors were indebted or became indebted on or after the date upon which the Bristol Transfer was made.

31.     Accordingly, pursuant to section 548(a)(1)(A) of the Bankruptcy Code, the Trustee may avoid the Bristol Transfer.  Additionally, pursuant to section 550(a)(1) of the Bankruptcy Code, the Trustee may recover from Defendant the value of the Bristol Transfer, in the amount of $15,000.00, together with interest thereon, for the benefit of the Debtors' estate.

## SECOND CAUSE OF ACTION

### Avoidance and Recovery of Constructive Fraudulent Conveyances
### Pursuant to 11 U.S.C. § 548(a)(1)(B) and 550(a)(1)

32.     The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

33.     At the time the Bristol Transfer was made to Defendant, the Debtors received less than reasonably equivalent value in exchange for such transfer, and (i) were insolvent or became insolvent as a result of said transfer, (ii) had unreasonably small capital for the businesses in which they were engaged or were about to engage, and/or (iii) intended to incur, or believed that they would incur, debts beyond their ability to pay as such debts matured.

34.    Accordingly, pursuant to section 548(a)(1)(B) of the Bankruptcy Code, the

Trustee may avoid the Bristol Transfer.  Additionally, pursuant to section 550(a)(1) of the

Bankruptcy Code, the Trustee may recover from Defendant the value of the, Bristol Transfer, in

the amount of $15,000.00, together with interest thereon, for the benefit of the Debtors' estate.


### THIRD CAUSE OF ACTION

**Avoidance and Recovery of  Actual Fraudulent Conveyances Pursuant to
11 U.S.C. §§ 544(b) and 550(a)(1) and §§ 276, 276-a and 278
of New York Debtor and Creditor Law**

35.    The Trustee realleges and incorporates by reference the allegations set forth in the

preceding paragraphs of this Complaint as if fully set forth herein.

36.    The Bristol Transfer was made to or for Defendant's benefit with actual intent to

hinder, delay and/or defraud the pertinent Debtors' creditors.

37.    Accordingly, pursuant to sections 544(b) of the Bankruptcy Code and sections

276 and 278 of the New York Debtor and Creditor Law, the Trustee may avoid the Bristol

Transfer.

38.    In addition, pursuant to section 276-a of the New York Debtor and Creditor Law,

the Trustee is entitled to reasonable attorneys' fees incurred in connection with this adversary

proceeding.

39.    Accordingly, pursuant to section 550(a)(1) of the Bankruptcy Code, the Trustee

may recover from Defendant the value of the Bristol Transfer, in the amount of $15,000.00,

together with interest thereon, and reasonable attorneys' fees, for the benefit of the Debtors'

estate.

## FOURTH CAUSE OF ACTION

### Avoidance and Recovery of Constructive Fraudulent Conveyances Pursuant to 11 U.S.C. §§ 544(b) and 550(a)(1) and §§ 273, 274, 275 and 278 <u>of New York Debtor and Creditor Law</u>

40.    The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

41.    The Bristol Transfer was made by the Debtor Starr to Defendant without fair consideration.  The Bristol Transfer was not made in good faith or honestly, fairly, and openly.

42.    At the time the Bristol Transfer was made by the Debtor Starr through Defendant, the Debtors (i) were insolvent or were rendered insolvent as a result of such transfer, (ii) had unreasonably small capital for the businesses in which they were engaged or were about to engage, and/or (iii) intended to incur, or believed that they would incur, debts beyond their ability to pay as such debts matured.

43.    Accordingly, pursuant to section 544(b) of the Bankruptcy Code and sections 273, 274, 275 and 278 of the New York Debtor and Creditor Law, the Trustee may avoid the Bristol Transfer.  Additionally, pursuant to section 550(a)(1) of the Bankruptcy Code, the Trustee may recover from Defendant the value of the Bristol Transfer, in the amount of $15,000.00, together with interest thereon, for the benefit of the Debtors' estate.

## FIFTH CAUSE OF ACTION
## FOR BREACH OF FIDUCIARY DUTY

44.     The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

45.     Defendant represented the Debtors in various legal matters. As an attorney, Defendant had a fiduciary duty to act in the best interest of the Debtors . The fiduciary duty owed by Defendant included the duties of care, loyalty, and good faith. As part of the duty of loyalty, Defendant had a duty not to act in furtherance of his own personal interests at the expense of the Debtors.

46.     Defendant breached his fiduciary duties by assisting Starr in his misappropriation of assets of clients of the Debtors, as alleged above.  In particular, Defendant assisted Starr to launder the misappropriated funds and to conceal the ongoing fraud from third parties and victims. In the course of one and one half years, Defendant participated in the misappropriation of over $20,000,000 of funds belonging to clients of the Debtors, giving rise to obligations incurred by the Debtors toward various of their clients in at least said amount.

47.     By reason of the foregoing, the Trustee is entitled to judgment in an amount to be proven at trial but believed to exceed $20 million, plus punitive damages to be determined by the Court, and the disgorgement of any legal fees paid to him by or on behalf of the Debtors.

## SIXTH CAUSE OF ACTION
## FOR AIDING AND ABBETTING STARR'S FRAUD

48.     The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

49.    In the year and one half before Starr's arrest in May 2010, Starr fraudulently diverted more than $20,000,000 of client assets for his personal benefit, and for the benefit of certain others, including Defendant.  Starr's guilty plea establishes that the criminal scheme involved acts of wire fraud, money laundering, and investment adviser fraud by which Starr caused losses in excess of $20,000,000 to clients of the Debtors.

50.    Defendant materially assisted Starr commit this fraud upon the clients of the Debtors, as alleged above. In particular, during the year and one half preceding the Starr Companies' closure, Starr and Bristol made almost one hundred separate transfers related to the misappropriation of more than $20,000,000 of clients' monies. Defendant knew these funds originated with clients of the Starr Companies and knew that the money was diverted to Starr, to Starr's wife, and to certain others, including Defendant, who received the Bristol Transfer and possibly additional fraudulent transfers as well.

51.    Defendant's aiding and abetting Starr in the aforesaid fraudulent scheme has subjected the Debtors' estate to claims of the many former clients of the Starr Companies who were bilked and defrauded by Starr with the assistance of Defendant.

52.    By reason of the foregoing, the Trustee is entitled to judgment in an amount to be proven at trial but believed to exceed $20 million, plus punitive damages to be determined by the Court, and the disgorgement of any legal fees paid to him by or on behalf of the Debtors.

## SEVENTH CAUSE OF ACTION
## FOR LEGAL MALPRACTICE

53.    The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

54.     Defendant represented the Debtors during the period commencing in 2009 and lasting into May, 2010.  There was thus privity between Defendant and the Debtors.

55.     In connection with this representation, Defendant owed a duty to the Debtors to perform all services with reasonable skill, care, competence and diligence and not to depart from good and accepted practice by an attorney for a client.

56.     As set forth above, Defendant departed from good and accepted practice in his representation of Debtors.  In particular, Defendant assisted Starr to launder the misappropriated funds and to conceal the ongoing fraud from third parties and victims.  In the course of one and one half years, Defendant participated with Starr in the misappropriation of over $20,000,000 of funds belonging to clients of the Debtors.  In connection with Defendants' actions related to this fraudulent scheme, Defendant:

a.     failed to exercise the skill, care and diligence commonly required and employed by attorneys;

b.     failed to properly protect the interests and legal rights of the Starr Companies; and

c.     were otherwise careless, negligent and unprofessional in the care, skill and services rendered.

d      proximately caused damage to the Debtors.

57.     Had Defendant properly fulfilled his duties and obligations to the Starr Companies, Starr's misappropriation of client funds could have been prevented, a substantial portion of the present claims against the bankruptcy estate could have been avoided, and the value of the Starr Companies as an ongoing business could have been preserved.

58.     Moreover, Defendant's acts proximately caused damage to Debtors because significant funds were diverted from the Debtors' use, the Debtors' business was substantially

damaged, and the Debtors and the estate were subjected to the multimillion dollar claims of the Debtors' many former clients who were bilked and defrauded, as a result of the departures from good and accepted practice by Defendant.   Defendant's acts were thus a proximate cause of the aforesaid injuries to the Debtors.

59.    But for the acts of Defendant, the Debtors would have enjoyed a better financial outcome, would not have suffered pecuniary loss, and would have had a better economic result.

60.    By reason of the foregoing, the Trustee is entitled to judgment in an amount to be proven at trial but believed to exceed $20 million, plus punitive damages to be determined by the Court, and the disgorgement of any legal fees paid to him by or on behalf of the Debtors.

## EIGHTH CAUSE OF ACTION
## FOR LEGAL MALPRACTICE IN CONTRACT

61.    The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

62.    When Defendant agreed to be retained by the Debtors to represent their interests, a contractual relationship was formed.

63.    Defendant, in consideration of legal fees, agreed to provide specific competent and professional legal services consistent with the accepted legal norms of the profession, to engage in certain actions,  and undertake necessary investigation and acts. These acts were not performed.

64.    The Debtors and Defendant entered into a contact in which Defendant agreed to represent the Debtors according to the standards of good and adequate representation by an attorney, to perform certain tasks of investigation, and the Debtors agreed to pay legal fees.

65.     The Debtors granted a fee as demanded by Defendant, but Defendant breached the contract by the nature of his legal representation of the Debtors and his participation and assistance in Starr's fraudulent scheme, as more fully set forth above.

66.     Defendant's acts proximately caused damage to Debtors because significant funds were diverted from the Debtors' use, the Debtors' business was substantially damaged, and the Debtors and the estate were subjected to the multimillion dollar claims of their many former clients who were bilked and defrauded, as a result of the departures from good and accepted practice by Defendant.  Defendant's acts were thus a proximate cause of the aforesaid injuries to the Debtors.

67.     But for the acts of Defendant, Debtors would have enjoyed a better financial outcome, would not have suffered pecuniary loss, and would have had a better economic result.

68.     By reason of the foregoing, the Trustee is entitled to judgment in an amount to be proven at trial but believed to exceed $2.5 million, together with interest thereon.

## RELIEF REQUESTED

WHEREFORE, the Trustee requests that this Court enter judgment in favor of the Trustee and against Defendant Bristol as follows:

a.     On the First Cause of Action, a determination that the Bristol Transfer constitutes an actual fraudulent conveyance and is subject to avoidance under section 548(a)(1)(A) of the Bankruptcy Code, and judgment for the recovery from Defendant of the amount of $15,000.00, plus interest, under section 550(a) (1) of the Bankruptcy Code;

b.      On the Second Cause of Action, a determination that the Bristol Transfer constitutes a constructive fraudulent conveyance and is subject to avoidance under section 548(a)(1)(B) of the Bankruptcy Code, and judgment for the recovery from Defendant of the amount of $15,000.00, plus interest, under section 550(a)(1) of the Bankruptcy Code;

c.      On the Third Cause of Action, a determination that the Bristol Transfer constitutes an actual fraudulent conveyance and is subject to avoidance under section 544(b) of the Bankruptcy Code and sections 276 and 278 of the New York Debtor and Creditor Law, and judgment for the recovery from Defendant of $15,000.00,  plus interest, under section 550(a)(1) of the Bankruptcy Code, as well as reasonable attorneys' fees under section 276-a of the New York Debtor and Creditor Law;

d.      On the Fourth Cause of Action, a determination that the Bristol Transfer constitutes a constructive fraudulent conveyance and is subject to avoidance under section 544(b) of the Bankruptcy Code and sections 273, 274, 275 and 278 of the New York Debtor and Creditor Law, and judgment for the recovery from Defendant of the amount of $15,000.00, plus interest, under section 550(a)(1) of the Bankruptcy Code;

e.      On the Fifth Cause of Action, judgment in an amount to be proven at trial but believed to exceed $20 million, plus punitive damages to be determined by the Court, and the disgorgement of any legal fees paid to Defendant by or on behalf of the Debtors, plus interest upon all of the foregoing;

f.      On the Sixth Cause of Action, judgment in an amount to be proven at trial but believed to exceed $20 million, plus punitive damages to be determined by the Court, and the disgorgement of any legal fees paid to Defendant by or on behalf of the Debtors, plus interest upon all of the foregoing;

g.      On the Seventh Cause of Action, judgment in an amount to be proven at trial but believed to exceed $20 million, plus punitive damages to be determined by the Court, and the disgorgement of any legal fees paid to Defendant by or on behalf of the Debtors, plus interest upon all of the foregoing;

h.      On the Eighth Cause of Action, judgment in an amount to be proven at trial but believed to 2.5 Million plus interest upon all of the foregoing;

i.      In the event that any documentation and information still to be reviewed by and/or produced to the Trustee and his retained professionals in the Debtors' consolidated bankruptcy case reveal that there were (a) additional transfers made by and/or on behalf of any of the Debtors to and/or on behalf of Defendant without any or adequate consideration therefor ("Additional Transfers"), and/or (b) any transfers made by  and/or on behalf of any of the Debtors to any third parties that are avoidable by the Trustee, portions and/or all of which were then transferred by any of such third parties to Defendant ("Subsequent Transfers"), and are thus recoverable under the Bankruptcy Code and/or other applicable law, then judgment for the recovery from Defendant of the aggregate amount of such Additional Transfers and Subsequent Transfers, together with interest thereon, pursuant to section 550(a)(1) of the Bankruptcy Code.

j.      Awarding the Trustee's reasonable attorneys' fees and costs; and

       k.      Granting any additional relief this Court deems just and equitable.

Dated:  February 19, 2013
       New York, New York

                            Respectfully submitted,

                            **ANDREW LAVOOTT BLUESTONE, ESQ.**

                            By:  /s   Andrew Lavoott Bluestone
                            Andrew Lavoott Bluestone
                            233 Broadway, Suite 2702
                            New York, New York 10112
                            alb@bluestonelawfirm.com
                            (212) 791-5600

                            *Proposed Special Legal Malpractice Counsel to the*
                                  *Chapter 7 Trustee*